# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

VINA M. HERTEL,

    Plaintiff,

    v.                                                     Case No. 06-C-802

MICHAEL J. ASTRUE,[1]
 Commissioner of the Social Security
 Administration,

    Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Vina M. Hertel, commenced this action on July 26, 2006, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## PROCEDURAL HISTORY

On April 29, 2002, the plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability as of January 1, 2002, on the basis of mental impairments. She subsequently filed an application for supplemental security income on

---

[1]The court has amended the caption to substitute Michael J. Astrue, Commissioner of the Social Security Administration, as the defendant in this case. On February 12, 2007, Michael J. Astrue became Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

November 18, 2004. The plaintiff's applications were denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Guy E. Fletcher on January 19, 2006. The plaintiff, who was represented by counsel, appeared and testified, along with Dr. N. Timothy Lynch, a clinical psychologist, and vocational expert William S. Dingess.

In a February 14, 2006, decision, the ALJ found that although the medical evidence establishes that the plaintiff can be considered "severely impaired," the medical evidence did not establish that her impaired condition meets or equals in severity the requirements of any listed section or sections in Appendix 1, Subpart P of Regulations No. 4. He further found that the plaintiff, while properly treated, has the residual functional capacity to perform the requirements of a simple, repetitive, low-stress job at any exertional level that would not involve significant interaction with co-workers, supervisors, or the public.

Finally, the ALJ found that section 404.1569 of Regulations No. 4, section 416.969 of Regulations No. 16 and applicable section 204.00 of Appendix 2 to Subpart P of Regulations No. 4 used as a framework for decision making provide that, considering the plaintiff's overall vocational factors, residual functional capacity, and the testimony of the vocational expert, the plaintiff is "not disabled." The ALJ concluded that the plaintiff is not under a "disability" as defined in the Social Security Act and, therefore, is not entitled to disability insurance benefits or supplemental security income. The ALJ's decision became the Commissioner's final decision on May 26, 2006, when the Appeals Council denied the plaintiff's request for review. See Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).

**APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medical impairment that can be expected to last for over twelve months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently employed; 2) whether the plaintiff has a severe impairment; 3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1, which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff can perform her past relevant work; and 5) whether the plaintiff is capable of performing any other work in the national economy given her age, education and work experience. Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-23 (7th Cir. 1993).

Once the plaintiff has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the plaintiff does not have a listed impairment but cannot perform her past work, the burden shifts to the Commissioner to show that the plaintiff can perform some other job. See Allen v. Sullivan, 977 F.2d 385, 387 (7th Cir. 1992); Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).

The plaintiff bears the burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5). However, once the plaintiff has demonstrated an impairment of sufficient severity to preclude the kind of work in which she previously engaged, the burden shifts to the Commissioner to prove that some other kind of substantial gainful employment exists which the plaintiff is able to perform. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001); Tom v. Heckler, 779 F.2d 1250, 1252-53 (7th Cir. 1985).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than her vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Cummins v. Schweiker, 670 F.2d 81, 82 (7th Cir. 1982). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Smith v. Schweiker, 735 F.2d 267, 271 (7th Cir. 1984).

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and

-4-

Human Services, 969 F.2d 534, 535 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995). "The Social Security Act specifically provides that 'the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.'" Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). See 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the [Commissioner's] findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (quoting Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003); Diaz, 55 F.3d at 305 (quoting Richardson v. Perales, 402 U.S. 389, 401 [1971]). "Substantial evidence must be more than a scintilla but may be less than a preponderance." Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Richardson, 402 U.S. at 401; Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997); Jones, 10 F.3d at 523. However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

## **ANALYSIS**

The plaintiff challenges the ALJ's decision on three grounds. First, the plaintiff asserts that the ALJ failed to comply with the requirement of Social Security Ruling (SSR) 96-2p in finding that the plaintiff was not disabled. Second, the plaintiff maintains that the ALJ did not adequately assess the plaintiff's credibility and, thus, did not comply with the mandate of SSR 96-7p and relevant case law. Third, the plaintiff states argues that the ALJ failed to properly evaluate her residual functional capacity (RFC) as required by SSR 96-8p.

The plaintiff contends that the ALJ's decision that she was not disabled was not supported by substantial evidence in the record because: 1) he failed to discuss the opinion of Joseph Burgarino, M.D., the plaintiff's treating doctor, regarding the plaintiff's mental impairments other than to recite the opinions of N. Timothy Lynch, Ph.D, the clinical psychologist who testified at the hearing; 2) the ALJ misstated the findings of Lula F. Reams, Psy.D., and to some extent the testimony of Dr. Lynch; and 3) the ALJ failed to discuss the state agency reviewing psychologists' opinions. As a result, the plaintiff maintains that the ALJ failed to comply with the requirements of SSR 96-2p, thereby committing an error of law. In response, the Commissioner asserts that the ALJ's decision that the plaintiff could work with proper restrictions is supported by the substantial evidence.

It is well-settled that the ALJ must give substantial weight to the medical evidence and opinions submitted unless specific legitimate reasons constituting good cause are shown for rejecting them. Knight, 55 F.3d at 314. "Normally, 'a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record.'" Schmidt v. Astrue, __F.3d__, 2007 WL 2255216 at *7 (7th Cir. Aug. 8, 2007); Skarbek v. Barnhart, 390 F.3d 500,

-6-

503 (7th Cir. 2004); see also, 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-8p.

"However, 'while the treating physician's opinion is important, it is not the final word on a claimant's disability.'" Schmidt, __F.3d__, 2007 WL 2255216 at *7 (quoting Books v. Chater, 91 F.3d 972, 978 [7th Cir. 1996]). An ALJ may discount a treating doctor's medical opinion if it is internally inconsistent, as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability. Skarbek, 390 F.3d at 503 (quoting Clifford v. Apfel, 227 F.3d 863, 870 [7th Cir. 2000]); see also, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)(citing Zurawski, 245 F.3d at 888). The ALJ is not required to address every piece of evidence or testimony, but the ALJ must at least minimally articulate his analysis of the evidence "so the court can follow his reasoning." Skarbek, 390 F.3d at 503.

Courts have acknowledged, however, that "a claimant's treating physician may be biased in favor of the claimant; bias that a consulting physician may not share. . .." Micus v. Bowen, 979 F.2d 602, 607 (7th Cir.1992). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Books, 91 F.3d at 979. "The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise." Id. (quoting Stephens v. Heckler, 766 F.2d 284, 289 [7th Cir.1985]).

Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In any event, a treating physician's statement that the claimant is disabled cannot itself be conclusive; the ultimate determination of whether a claimant is disabled is reserved to the Commissioner. See 20 C.F.R.

-7-

§ 404.1527(e)(1); see also, Dixon, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." [internal citation omitted]).

A brief review of the medical evidence reveals that on about December 9, 2004, the plaintiff saw Dr. Reams for a consultative examination.[1] The plaintiff, who was 22 years old at the time and the mother of three children, reported that she wants to sleep "all the time, all day and all night." (Tr. 241). Her sister and her boyfriend take care of her children. (Tr. 240). Dr. Reams administered the Wechsler Adult Intelligence Scale - Third Edition to the plaintiff. Dr. Reams reported that the plaintiff "appeared to put forward her best effort in each of the test (sic)" and that "her attention, concentration and motivation remained high throughout the assessment." (Tr. 243). The plaintiff had a verbal IQ of 78, a performance IQ of 70 and a full scale IQ of 72. Dr. Reams found that the plaintiff is able to understand, remember and carry out simple instructions and opined that the plaintiff would relate well to supervisors and co-workers "were it not for her depression." (Tr. 244). Dr. Reams noted that the plaintiff was scheduled to have a medical evaluation the coming week.

In December 2004, Jack Spear, Ph.D., reviewed the plaintiff's records for the state agency. He noted that, under Listing 12.04, Affective Disorders, the plaintiff had a depressive disorder and that under Listing 12.05 Mental Retardation, the plaintiff had a borderline IQ with a full scale IQ of 72. (Tr. 250-51). In considering the B criteria of the Listings, the rating of functional limitations, Dr. Spear noted that the plaintiff had mild restrictions of activities of daily

---

[1] The plaintiff did not appear for three previously scheduled consultative examinations. (Tr. 216-18).

-8-

living, moderate limitations in maintaining social functioning and in maintaining concentration, persistence and pace. (Tr. 257). She had no episodes of decompensation.

In considering the plaintiff's functional capacity, Dr. Spear stated that the plaintiff was moderately limited in her ability to understand and remember detailed instructions and to carry out those instructions; her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 261-62). In all other areas, he noted that the plaintiff was not significantly limited. Id.

On December 6, 2004, the plaintiff was evaluated by Kristina Vollmer, M.S., of the Aurora Behavioral Clinic, who diagnosed the plaintiff with major depression and a Global Assessment of Functioning (GAF) currently at 25, with a GAF of 35 as the highest in the past year. (Tr. 281). On December 13, 2004, the plaintiff attended a second counseling session and reported issues with depression and anger. The plaintiff was given prescriptions for Prozac and Abilifer, which was subsequently changed to Seroquel because of insurance issues. (Tr. 275-76).

On January 19, 2005, the plaintiff was seen by Dr. Burgarino, who noted no change in the plaintiff's level of functioning and rated her current GAF at 50. (Tr. 274). Although Dr. Burgarino's progress notes are generally illegible, it appears that he prescribed Lamicital. Dr. Burgarino saw the plaintiff again on March 4, 2005, at which time he noted "no change" in the plaintiff's condition. (Tr. 272). He prescribed Provigil and Lamicital. (Tr. 272-73). When the plaintiff next saw Dr. Burgarino on April 18, 2005, he noted that the plaintiff reported increased

-9-

severe mood swings. (Tr. 310). He prescribed Zyprexa. Id. Dr. Burgarino also wrote a notation stating, "Ms. Hertel has severe mixed rapid cycling bipolar disorder. She is unable to work at all for at least 12 months." (Tr. 270).

In April 2005, the plaintiff's records were reviewed again by Keith Bauer, Ph.D. He affirmed Dr. Spear's December 2004 assessment as written. (Tr. 263).

Dr. Burgarino saw the plaintiff again in June, July and September 2005. In June, the plaintiff reported episodes of rapid cycling and was again prescribed Zyprexa. (Tr. 309). On July 11, 2005, Dr. Burgarino reported no change in the plaintiff's functioning. (Tr. 308). He completed a medical examination and capacity form in which he opined that the plaintiff had bipolar depression and that her prognosis was "guarded." (Tr. 307). He opined that the plaintiff had low tolerance for frustration, difficulty working around other people, communicating her needs, following instructions and controlling her anger appropriately. (Tr. 306). He also noted that she had difficulty in engaging in complex tasks requiring judgment and difficulty with decision making and impulse control. Id. He stated that her medication's side effects would not affect her ability to participate in a work environment. Id. Dr. Burgarino opined that the plaintiff could work "0" hours in a five day work week. Id.

In October 2005, Dr. Burgarino prescribed Wellbutren for the plaintiff. (Tr. 303-04). He also completed a Mental Impairment Medical Assessment Form in December 2005, noting that the plaintiff was unable to meet competitive standards in the ten categories of mental abilities and aptitude needed to work. (Tr. 313). He opined that the plaintiff had "marked" functional limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace and four or more repealed episodes of decompensation. (Tr. 314).

-10-

In his decision, the ALJ noted that in view of the plaintiff's allegations, he sought the opinion of a medical expert, Dr. Lynch, at the hearing to assist in determining the actual nature and effects of the plaintiff's impaired condition. Dr. Lynch concluded, based on his review of the records, that "the record supports only a diagnosis of dysthymia," not bipolar depression with a full range of symptoms and marked limitations as found by Dr. Burgarino. (Tr. 16). The ALJ relied on Dr. Lynch's conclusion that "the evidence does not document the presence of any marked functional limitations." (Tr. 16). Neither the ALJ nor Dr. Lynch mentioned Dr. Burgarino's opinion that the plaintiff had significant "marked" functional limitations. See Tr. 314.

The Commissioner asserts that Dr. Lynch's opinion is supported by the findings of Dr. Reams. According to the Commissioner, the ALJ noted that Dr. Lynch basically concurred with Dr. Reams' consultative psychological examination report in Exhibit 5F "which indicated that the claimant would be able to handle simple tasks in the right environment (especially if she were to maintain and appropriately therapeutic anti-depressant medication regimen)." (Tr. 16-17). However, as the plaintiff observes, a review of Dr. Reams' report does not support this assertion. Rather, Dr. Reams reported that the plaintiff "displays a pleasant personality an were not for her depression, in the opinion of the examiner, she would relate well to supervisors and co-workers." (Tr. 244 [Exh. 5F]). According to Dr. Reams, the plaintiff is able to understand, remember and carry out simple instructions, but her "sustained concentration, persistence and pace are currently impaired due to her depressed mood." Id. Moreover, neither Dr. Lynch nor Dr. Reams provided an opinion with respect to the benefits to the plaintiff of a medication regime.

-11-

The Commissioner also states that "the ALJ compared the plaintiff's treatment history with Dr. Burgarino's extreme opinion as well as state agency reviewers." (Defendant's Memorandum in Support of the Commissioner's Decision [Defendant's Memorandum] at 13). However, the ALJ's decision belies this assertion. The ALJ did not address the reports of the state agency reviewing psychologists, Dr. Spear and Dr. Bauer, in his decision. Since the ALJ did not rely on the findings of Dr. Spear or Dr. Bauer to support his conclusions, the Commissioner's reliance on their findings in his brief is not appropriate. "[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). Therefore, the court will not consider the Commissioner's arguments regarding the findings of the state agency reviewing psychologists.

In this case, the ALJ did not address the opinion of Dr. Burgarino, the plaintiff's treating physician in his decision. While an ALJ may discount a treating physicians medical opinion if it is inconsistent with the opinion of a consulting physician, he must at least "minimally articulate" his reasons for crediting or rejecting evidence of disability. See Skarbek, 390 F.3d at 503. Such minimal articulation is lacking in this case. The ALJ failed to give good reasons for rejecting Dr. Burgarino's assessment of the plaintiff's condition while giving controlling weight to the opinion of Dr. Lynch. Rather than explaining why he rejected Dr. Burgarino's opinion about the plaintiff's medical condition, the ALJ merely adopted Dr. Lynch's conclusions based on Dr. Lynch's review of the record and the plaintiff's testimony. In addition, the ALJ relied on statements of Dr. Lynch which are not borne out by the record.

Given the ALJ's lack of even minimal articulation of his analysis of the evidence, the court is unable to follow the reasoning of the ALJ leading to his conclusion that substantial

evidence does not support a finding of disability. See Clifford, 227 F.3d at 870. Since the court is unable to follow in the ALJ's reasoning in rejecting the treating physician's opinion, the case must be reversed and remanded for further proceedings to address this issue.

**B.     Credibility Determination**

The plaintiff contends that the ALJ did not adequately assess her credibility because he failed to follow the standards of SSR 96-7p and relevant case law when making his credibility determination. Specifically, the plaintiff asserts that the ALJ did not support his finding that she was not credible by citing to specific examples in the record and failed to consider factors that precipitate and aggravate the plaintiff's symptoms. In response, the Commissioner points out that SSR 96-7p states that the ALJ must "consider" certain factors in addition to the objective medical evidence when assessing a plaintiff's statements. Here, the Commissioner maintains that the ALJ's credibility finding is supported by the evidence in the record.

Generally, an ALJ's credibility determination is entitled to "special deference" because the ALJ is in the best position to see and hear the witness and determine credibility. Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000); Ehrhart, 969 F.2d at 534; Windus v. Barnhart, 345 F. Supp.2d 928, 945 (E.D. Wis. 2004). Courts will reverse an ALJ's credibility determination only if it is "patently wrong." Barnett, 381 F.3d at 664; Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). Regardless of the basis of the ALJ's credibility determination, when evaluating a plaintiff's credibility, the ALJ must comply with SSR 96-7p. Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539-40 (7th Cir. 2003).

Social Security Ruling 96-7p provides in relevant part:

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and § 416.929(c) describe the

-13-

kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p does not require the ALJ to analyze and elaborate on each of these factors when making a credibility determination, but merely provides that the ALJ must "consider" certain factors, in addition to the objective medical evidence when assessing a plaintiff's credibility. Although an ALJ need not address every piece of evidence, he must articulate some legitimate reason for his decision. Lechner v. Barnhart, 321 F.Supp.2d 1015, 1027 (7th Cir. 2004). The ALJ must build a bridge from the evidence to the conclusion that the plaintiff was not credible. Id. at 1029-30; see also, Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002).

In his decision, the ALJ noted that the plaintiff has an admitted history of alcohol and drug abuse, but that she testified at the hearing that the drug abuse ended well before her alleged disability onset date and that she stopped drinking about seven months prior to the hearing. (Tr. 16). He stated that the plaintiff mainly complained of chronic depression and mood changes. The plaintiff had testified that she had trouble getting along with others and that she spent most of her time watching television due to a lack of energy. The ALJ pointed

-14-

out, however, that the plaintiff stated that she is usually able to manage her personal hygiene, help care for her small children and do some household chores like cooking, cleaning and shopping. Accordingly, the ALJ stated that based on "a thorough review of the entire record," he could not "credit the claimant's contention of disability." (Tr. 16).

However, the ALJ ignored other significant countervailing testimony. The plaintiff testified that some weeks she sleeps 18-20 hours per day, while there are other times when she does not sleep at all. (Tr. 35). She experiences crying spells about twice a day. The plaintiff testified that her mother, brother and boyfriend help with her children on her bad days and at one point she moved in with her sister so that her sister could help her take care of her children. (Tr. 36). The plaintiff experiences good days about twice a month. (Tr. 40). Moreover, although the plaintiff goes grocery shopping, she does not go by herself. (Tr. 38). According to the plaintiff, her brother and mother take her children to school and her boyfriend helps them with their homework and puts them to bed. (T. 37). The plaintiff is not involved in her children's school. (Tr. 37). She also describes her ability to concentrate on tasks as "horrible," noting that at times she forgets that the bath water is running or that she has food in the oven. (Tr. 38). Minimal daily activities do not establish that a person is capable of substantial gainful activity. Clifford, 227 F.3d at 872.

The Commissioner argues that the record supports the ALJ's finding that the plaintiff's "psychological treatment was limited." (Defendant's Memorandum at 12). However, the page of the ALJ's decision cited by the defendant does not support this assertion. Rather, a review of the ALJ's decision shows that to support his opinion that the plaintiff does not suffer pain or other symptoms that could be considered disability in severity, the ALJ referenced the plaintiff's "limited treatment overall (other than anti-depressant medication)." (Tr. 17). The Commissioner

also states that, according to Dr. Burgarino, the plaintiff, who had trouble controlling her anger appropriately and could not work around others, had no problem dealing with her children. Id. The Commissioner further argues that in Dr. Burgarino's opinion, the plaintiff would have difficulty following through on agreed actions but she, nonetheless, attended all but one (her car would not start) medical appointment.[2] However, as the plaintiff points out, the ALJ did not rely on any of these arguments in concluding that the plaintiff was not disabled. Therefore, they must be disregarded. Based on the foregoing, the court concludes that the ALJ did not adequately assess the plaintiff's credibility as required.

**C. Plaintiff's RFC Evaluation**

The plaintiff asserts that the ALJ failed to properly evaluate her residual functional capacity (RFC) as required by SSR 96-8p. She also maintains that the ALJ did not properly consider the opinion of her treating physician, Dr. Burgarino. In response, the Commissioner asserts that the ALJ properly assessed the plaintiff's RFC.[3]

The ALJ found that the plaintiff could be considered severely impaired "but that her impaired condition did not precisely meet or equal the impairments of any listed section or sections in Appendix 1 of Subpart P of Regulations No. 4." (Tr. 17). He stated that the plaintiff did not suffer pain or other symptoms that could be considered disabling in severity and noted the absence of any need by the plaintiff for pain medication. Rather, the ALJ found, in keeping with the opinion of the medical expert, Dr. Lynch, that the plaintiff, while properly treated, has

---

[2] Contrary to the Commissioner's assertion, the plaintiff failed to appear for three scheduled consultative examinations that had been scheduled prior to December 9, 2004. (Tr. 216-18).

[3] The Commissioner again references the state agency reviewers, noting that the ALJ compared the plaintiff's treatment history with Dr. Burgarino's opinion "as well as state agency reviewers." (Tr. 14; see also Tr. 15). The ALJ's decision contains no mention of Dr. Spear or Dr. Bauer.

-16-

retained the residual functional capacity to perform the requirements of at least a wide range of simple, routine, low-stress work, at any exertional level, that would not involve significant interaction with co-workers, supervisors, or the public. (Tr. 17).

Even if a plaintiff's impairment does not meet or equal a listing, the plaintiff still may not have the mental RFC to perform substantial gainful activity (SGA). Wates v. Barnhart, 274 F.Supp.2d 1024, 1036 (7th Cir. 2003); 20 C.R.F. Pt. 404, Subpt. P., App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3) "The determination of mental RFC is crucial to the evaluation of [the claimant's] capacity to do SGA when [her] impairment(s) does not meet or equal the criteria of the listing, but is nevertheless severe." Wates, 274 F. Supp.2d at 1036 (quoting 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00). Although an ALJ need not give controlling weight to the opinion of a treating source that the plaintiff meets a listing, "the ALJ may not ignore the medical findings underlying such a conclusion, even if – fully credited – such findings would compel a conclusion that the claimant is disabled." Wates, 274 F.Supp.2d at 1036.

Here, the court has concluded that the ALJ relied on the opinion of Dr. Lynch and did not minimally articulate his reasons for discounting the opinion of the plaintiff's treating physician. Given the court's conclusion and the ALJ's reliance on Dr. Lynch in determining the plaintiff's RFC, the issue of the plaintiff's RFC must be remanded for reconsideration.

On a related matter, the court notes that in her request for relief in her initial brief, the plaintiff requests that the case be remanded to the ALJ to allow her the opportunity for another hearing and to testify and present additional evidence at that hearing. The plaintiff did not include this request in her reply brief. However, to the extent the plaintiff is requesting a remand under sentence six of 42 U.S.C. § 405(g), to merit such remand a plaintiff must show that "there is new evidence which is material and that there is good cause for failure to

-17-

incorporate such evidence into the record in a prior proceeding." Jens, 347 F.3d at 214. Evidence is "material" if there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." Id. (quoting Perkins v. Chater, 107 F.3d 1290 [7th Cir. 1997] [internal quotations omitted.]). In this case, the plaintiff has not established grounds for a sentence six remand and, therefore, any such request for a remand pursuant to sentence six is denied.

For the reasons stated herein, the Commissioner's decision to deny benefits to the plaintiff is reversed and the case is remanded for further proceedings consistent with this opinion.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's request to reverse or remand the decision of the Commissioner be and hereby is **granted**. The decision of the Commissioner is **reversed and remanded** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

**IT IS FURTHER ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2007.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge